UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGELA E. DELEON,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

Case No. C16-5513-RAJ

**ORDER AFFIRMING COMMISSIONER'S FINAL DECISION**

Angela E. DeLeon seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Ms. DeLeon contends the ALJ erred in: (1) evaluating the medical evidence; (2) her own symptom testimony; (3) the lay evidence; (4) failing to find Ms. DeLeon met a Listing; and (5) evaluating her residual functional capacity (RFC) and finding she could perform other jobs in the national economy at step five. Dkt. 17 at 2. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

On November 28, 2008, Ms. DeLeon applied for benefits, alleging disability as of July 20, 2008. Tr. 772. Ms. DeLeon's applications were denied initially and on reconsideration. Tr. 58-98, 772. The ALJ conducted a hearing on January 31, 2011, and on February 14, 2011,

issued an unfavorable decision. 37-57. The Appeals Council denied review and on appeal, based on the agreement of the parties, the District Court reversed and remanded the case for further proceedings. Tr. 884-910. After the ALJ conducted a hearing on December 15, 2014, and a supplemental hearing on April 14, 2015, the ALJ issued a decision again finding Ms. DeLeon not disabled. Tr. 772-88.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. DeLeon has not engaged in substantial gainful activity since July 20, 2008, the alleged onset date.

**Step two:** Ms. DeLeon has the following severe impairments: traumatic brain injury, cervical spine degenerative disc disease, post-concussion syndrome and depression.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Ms. DeLeon can perform light work except she cannot climb ladders, ropes or scaffolds. She can no more than occasionally do overhead work including reaching overhead. She should avoid hazardous machinery in an industrial environment. She is permitted to drive. She is restricted to simple, entry level work and should have no more than occasional interaction with the public and coworkers.

**Step four:** Ms. DeLeon cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. DeLeon can perform, she is not disabled.

Tr. 772-88. The Appeals Council denied Ms. DeLeon's request for review making the ALJ's decision the Commissioner's final decision. Tr. 751-56.[3]

## DISCUSSION

**A.     Medical Evidence**

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

The ALJ must provide "clear and convincing reasons" to reject the uncontradicted opinion of a treating or examining doctor. *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996). When contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* An ALJ may reject the opinion of a non-examining doctor by referring to specific evidence in the record. *See Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir. 1998).

### 1. Karleen Swartztrauber, M.D.

Ms. DeLeon contends the ALJ erred in evaluating Dr. Swarztrauber's opinion. Dkt. 17 at 3-4. The Court disagrees.

Ms. DeLeon points to several observations and symptoms noted by Dr. Swarztrauber in her treatment notes including that in December 2018, 6 months after her accident, Ms. DeLeon exhibited mild left facial weakness, impaired memory, difficulty explaining her symptoms, and that she smelled poorly. Dkt. 17 at 3; Tr. 453-56. Ms. DeLeon also notes that in March 2009, Dr. Swarztrauber noted Ms. DeLeon had shown expected improvement over the last three months but still had cognitive issues, difficulty multitasking, short term memory loss, headaches, dizziness, episodes of possible loss of consciousness and paresthesias in the arms. Dkt. 17 at 3; Tr. 491-97. Ms. DeLeon argues the ALJ erred in failing to acknowledge Dr. Swartztrauber's opinion was consistent with the opinions of Richard J. Perillo, Ph.D., Kimberly Schleef, D.O., and John Guerreiro, M.D. Dkt. 17 at 4. However, this conclusory argument fails to establish harmful error on the part of the ALJ. The ALJ discussed Dr. Swartztrauber's treatment notes and the symptoms described therein in evaluating the medical evidence and Ms. DeLeon's testimony and in formulating the RFC. Tr. 779-80. Although Ms. DeLeon recites several observations and symptoms described in Dr. Swarztrauber's treatment notes, she fails to identify any functional

ORDER AFFIRMING COMMISSIONER'S
FINAL DECISION - 3

limitation contained in Dr. Swartztrauber's opinion that the ALJ failed to account for in the RFC or in the hypothetical to the vocational expert. As such, Ms. DeLeon failed to meet her burden of showing the ALJ harmfully erred in evaluating Dr. Swartztrauber's opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless where it is "'inconsequential to the ultimate nondisability determination'" (quoting *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008))); *see Shinseki v. Sanders,* 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Moreover, as discussed below, the ALJ properly discounted the opinions of Dr. Perrillo, Dr. Schleef and Dr. Guerreiro.

In sum, Ms. DeLeon fails to establish the ALJ harmfully erred in evaluating Dr. Swarztrauber's opinion.

**2.    Richard J. Perillo, Ph.D.**

Dr. Perillo evaluated Ms. DeLeon in January 2011. Tr. 704-26. He opined that Ms. DeLeon's disability status was permanent. *Id.* He indicated Ms. DeLeon would be prone to make many more mistakes or judgmental errors or would have to put much more effort to insure the reliability of any work, thus creating feelings of fatigue and being overwhelmed. *Id.* He opined Ms. DeLeon faced a lifetime of irregular personal and work relationships and that her test results showed many delayed areas of impairment including accuracy and deficiencies on simple reaction time, visual scanning, delayed non-verbal memory, perceptual matching, complex attention and continual focus, and memory search, which "clearly indicate the claimant cannot be competitive." *Id.* He further stated that Ms. DeLeon's "rigidness and persisting in mistakes could also create unacceptable risks in any work environment." *Id.*

The ALJ reasonably discounted Dr. Perillo's opinion as inconsistent with his own report.

Tr. 783. Specifically, the ALJ notes that, contrary to the severe limitations contained in Dr. Perillo's opinion, his report showed only mildly abnormal neuropsychological testing results and that Ms. DeLeon suffered from only mild cognitive dysfunction. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may discount opinion that is inconsistent with the doctor's own clinical findings); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may reject a treating doctor's opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). Ms. DeLeon argues the ALJ erred in discounting Dr. Perillo's opinion because he failed to address Dr. Perillo's subsequent statement, from 2014, "in which he explained how his clinical test findings supported his opinion." Dkt. 7 at 6; Tr. 1164-69. However, Ms. DeLeon fails to identify or explain how Dr. Perillo's subsequent statement actually undermines the ALJ's finding of inconsistency between the initial opinion and the mild test results. The Court rejects this unsupported argument. Claims that are unsupported by explanation or authority may be deemed waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at * 2 (unpublished opinion) (citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (the burden is on the party claiming error to demonstrate the error and that the error was harmful).

    Moreover, Dr. Perillo's subsequent statement merely recites some of the statistics also cited in his initial report and does not, in fact, appear to provide any additional substantive explanation or support for his findings or opinions. Tr. 1164-69. No does Dr. Perillo's 2014 statement explain how or why his overall mild findings on testing actually support his conclusion

ORDER AFFIRMING COMMISSIONER'S
FINAL DECISION - 5

of severe limitations resulting in permanent disability. *Id.* Thus, Dr. Perillo's 2014 statement does not substantially undermine the ALJ's reason for rejecting his initial opinion nor does Ms. DeLeon argue that it establishes additional limitations to those identified in the initial opinion. Under the circumstances, the ALJ could reasonably discount Dr. Perillo's opinion as inconsistent with his own report and examination findings.[4] *See Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Accordingly, Ms. DeLeon fails to establish the ALJ harmfully erred in discounting Dr. Perillo's initial report or in failing to address his subsequent statement.[5]

### 3. Kimberly Schleef, D.O.

In June 2013, Dr. Schleef provided a medical source statement indicating that Ms. DeLeon's diagnoses included mild traumatic brain injury, cervical strain, C-1 ligamentous tear, lumbar sprain, migraine headaches and tension headaches. Tr. 730. She opined Ms. DeLeon had the following limitations: needed to rest for two hours during a work day; could sit for 3 hours in an 8-hour workday and stand and/or walk 4 hours total; must be able to shift positions at will from sitting, standing or walking; can lift and/or carry 20 pounds at one time but no more than 5

---

[4] Ms. DeLeon also argues the ALJ erred by "attempting to act as his own medical expert." Dkt. 17 at 6. This argument fails. The ALJ did not simply adopt his own medical conclusion without explanation but, rather, gave a specific and legitimate reason for rejecting Dr. Perillo's opinion, namely that it was inconsistent with his clinical findings. The law requires that in rejecting a medical opinion, the ALJ do more than state his conclusions but that "[h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). This is exactly what the ALJ did here.

[5] The ALJ also gave several other reasons for discounting Dr. Perillo's opinion. However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reason for discounting the opinion. *See Carmickle*, 533 F.3d at 1162 (including an erroneous reason, among other reasons for discounting a claimant's testimony, is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

pounds frequently; is unable to climb and has balance limits secondary to dizziness; can no more than occasionally stoop; can only write for 15 minutes, although typing is unrestricted; can grasp for less than 5 minutes; has a poor ability to maintain attention for extended periods of 2 hours, to maintain regular attendance and be punctual within customary tolerances, and to complete a normal workday and workweek without interruptions from psychologically based symptoms; has marked limitations in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace; would likely miss 1-2 days of work per week due to flares of pain and mental challenges due to her brain injury. Tr. 730-37.

The ALJ discounted Dr. Schleef's opinion as inconsistent with the medical evidence of record. *See Batson*, 359 F.3d at 1195 (ALJ may discredit treating-physician opinion that is "conclusory, brief, and unsupported by the record as a whole, […] or by objective medical findings."); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ( "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Specifically, the ALJ found Dr. Schleef's opinion with respect to her physical limitations inconsistent with the mild imaging reports, normal EMG results, and notes of the claimant taking only naproxen for pain. Tr. 783-84. Ms. DeLeon argues this was error because Dr. Schleef did not just base her findings on imaging reports and EMG results but "on the totality of [her] clinical findings." Dkt. 17 at 8. However, Ms. DeLeon does not argue the ALJ is incorrect in finding that Ms. DeLeon's imaging reports reflected only mild findings, that her EMG results were normal, and that she was primarily taking naproxen for pain. Nor does Ms. DeLeon identify any other clinical findings that support Dr. Schleef's opinion or undermine the ALJ's finding. This conclusory argument is insufficient to establish error. *See Independent Towers of Wash.*, 350 F.3d at 929 (the Court will "review only issues which are argued specifically and

distinctly in a party's opening brief […] a bare assertion of an issue does not preserve a claim.") (internal citations and quotation marks omitted). The ALJ could reasonably conclude that the mild imaging reports and normal EMG results and primary use of over-the-counter medication for pain undermined Dr. Schleef's opinion of severe physical limitations and Ms. DeLeon presents no specific argument or evidence, beyond the conclusory statement cited above, to establish the ALJ's interpretation is unreasonable. *See Batson*, 359 F.3d at 1195.

Ms. DeLeon also argues that the fact that she only took naproxen for pain does not prove she was not experiencing pain. Dkt 17 at 8. However, the ALJ did not find Ms. DeLeon was not experiencing any pain but, rather, found that the fact she was primarily using only an over-the-counter pain medication undermined Dr. Schleef's findings that her pain caused such severe disabling limitations. *See, e.g.,* Tr. 378 (October 2008 treatment note indicating Ms. DeLeon is not taking any pills most days and naproxen is taken only as needed and helps some). The fact that a claimant received only conservative treatment may serve as a valid basis upon which to reject an opinion that the impairment is disabling. *See Hanes v. Colvin*, 651 Fed.Appx. 703, 704 (9th Cir. 2016) (ALJ reasonably relied in part on evidence of claimant's conservative treatment to conclude that doctors' opinions were inconsistent with the objective medical evidence in the record); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding that the claimant received only conservative treatment for back injury is a clear and convincing reason for disregarding testimony that the claimant is disabled); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (ALJ reasonably discounted plaintiff's testimony of disabling pain on the grounds that his physical ailments were treated with an over-the-counter medication). The ALJ could reasonably conclude that the fact Ms. DeLeon primarily took only over-the-counter medication for her pain undermined Dr. Schleef's opinion of disabling physical limitations. Again, Ms.

DeLeon presents no specific argument or evidence, beyond the conclusory statement cited above, to establish the ALJ's interpretation of the record is unreasonable. *See Independent Towers of Wash.*, 350 F.3d at 929 (the Court will "review only issues which are argued specifically and distinctly in a party's opening brief […] a bare assertion of an issue does not preserve a claim.") (internal citations and quotation marks omitted); *see Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The ALJ also discounted Dr. Schleef's opinion with respect to Ms. DeLeon's mental limitations as inconsistent with her only mildly abnormal neuropsychological test results. Tr. 784. Ms. DeLeon argues that the ALJ's finding "is based on his incorrect analysis of Dr. Perrillo's opinion." Dkt. 17 at 8. However, as discussed above, the ALJ properly evaluated Dr. Perrillo's opinion. As such, the ALJ could reasonably discount Dr. Schleef's opinion as inconsistent with the only mildly abnormal neuropsychological testing results reflected in Dr. Perillo's report as well as Cheryl S. Brischetto, Ph.D.'s report. As noted by the ALJ, Dr. Brischetto's neuropsychological screening and report indicated Ms. DeLeon exhibited high average overall ability, that she seemed to perform weakest, but still in the average range, on working memory tasks and some tasks of visual processing and perceptual visuospatial functioning scores, and scored lower, but still in the low average to average range, on formal tests of concentration and memory. Tr. 514; *see Batson*, 359 F.3d at 1195 (ALJ may discredit treating-physician opinion that is "conclusory, brief, and unsupported by the record as a whole, […] or by objective medical findings.").

The ALJ also discounted Dr. Schleef's opinion with respect to Ms. DeLeon's mental limitations as inconsistent with her ability to manage college level coursework and serve as the

primary caregiver for three children, two of whom have special needs, while her husband works. Tr. 784. An ALJ may discount a doctor's opinion where it is inconsistent with a claimant's activities. *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). Ms. DeLeon argues the ALJ erred in discounting Dr. Schleef's opinion on this basis because returning to school was very difficult for her and her mother helped her with the children a couple days a week, as did her husband when he returned home from work. Dkt. 17 at 8. However, even if returning to school was difficult, the record shows that Ms. DeLeon returned to school half-time sometime in 2010 and, although she testified she struggled in some classes, she passed and the following term took on a full-time course load. Tr. 66. Furthermore, Ms. DeLeon testified that while she had a hard time in math class, her bookkeeping, management and writing courses were going well. Tr. 66-67.

It was not unreasonable for the ALJ to conclude that college coursework requires both intellectual ability as well as the cognitive ability to operate at a fairly high level. For instance, in order to complete college level coursework it is reasonable to conclude that an individual must be able to learn and remember material and to maintain sufficient concentration, persistence and pace to study, complete assignments and pass tests. Based on the record, the ALJ could reasonably find that Ms. DeLeon's ability to complete and pass college level courses, even with some difficulty, was inconsistent with Dr. Schleef's opinion of severe and disabling mental limitations. *See Molina*, 674 F.3d at 1113 ("[e]ven where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Furthermore, even

accepting that she received help from her mother a few days a week and her husband helped when he was not working, the ALJ could also reasonably find that Ms. DeLeon's ability to be the primary caretaker of her three children, two of whom had special needs and she homeschooled for a period of time, was also inconsistent with the disabling level of mental limitations opined by Dr. Schleef. Although Ms. DeLeon argues for an alternative interpretation of the record, she fails to establish the ALJ's interpretation was unreasonable. *See Molina*, 674 F.3d at 1111.

In sum, the ALJ did not err in evaluating Dr. Schleef's opinion.

### 4. John Guerreiro, M.D.

In July 2011 and July 2014, Dr. Guerreiro submitted two similar letters indicated Ms. DeLeon exhibited many traits consistent with TBI, particularly with focus and recall. Tr. 728, 1128. He noted Ms. DeLeon's chronic cervical strain, C-1 ligamentous tear, low back pain, migraines, and tension headaches. Tr. 1128. He opined that, while Ms. DeLeon was able to function at a high intellectual level, the amount of time required for many tasks as well as her recovery time greatly diminishes the practical aspect of her cognitive abilities and that this was true even for simple tasks. Tr. 728. He opined that even unskilled labor would "likely be untenable." *Id.*

The ALJ discounted Dr. Guerreiro's opinion as inconsistent with Dr. Perillo's report showing only mild abnormalities and only mild cognitive dysfunction as well as Ms. DeLeon's abilities to act as the primary caregiver to her three children and to attend college fulltime. *See Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 600–02. For the same reasons discussed above with respect to Dr. Schleef's opinion, the ALJ reasonably discounted Dr. Guerreiro's opinion on these grounds.

### 5. Dr. Asher

Dr. Asher reviewed Ms. DeLeon's records and testified at a hearing on December 14, 2014. Tr. 1177-82. Dr. Asher testified that Ms. DeLeon met a listing. Tr. 1179. Specifically, he testified that Ms. DeLeon was very able and bright and functioning at a very high level before her accident but that her abilities were significantly curtailed by the accident. *Id.* He indicated Ms. DeLeon could still be productive in short bursts, but after she does something requiring concentration and skill she is not able to function well in the days afterward. *Id.* He indicated Ms. DeLeon still tests at a high level, but she is very uneven over time. Tr. 1179-80. He opined that Ms. DeLeon's daily activities, social functioning, and concentration, persistence or pace varies from mild to markedly limited but that he did not know what proportion of time Ms. DeLeon would be at different levels of function. Tr. 1180. He indicated Ms. DeLeon had no episodes of decompensation. *Id.* He indicated that Listing 12.02(C)(2) and 12.04(C)(2) might be considered, as Ms. DeLeon has a residual disease process that has resulted in such marginal adjustment that even a minimal increase of mental demands or change in environment would cause her to decompensate. Tr. 1181-82.

Again, as with Dr. Schleef and Dr. Guerreiro, the ALJ reasonably discounted Dr. Asher's opinion as inconsistent with Dr. Perillo's mild findings on neuropsychological testing, as well as Ms. DeLeon's ability to take and pass college level classes, to successfully raise three children, two of whom have special needs and she homeschooled for some period of time after her accident. Tr. 784; *see Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 600–02. The ALJ also notes that although Ms. DeLeon testified her husband helps with homeschooling, she also testified her husband works full time. Tr. 784. The ALJ could reasonably conclude that Dr. Perillo's mild findings on clinical testing undermined Dr. Asher's opinion of severe mental limitations. Moreover, the fact that Ms. DeLeon was able to engage in the activities described

above undermines Dr. Asher's opinion that she was markedly limited in her daily activities, social functioning, and concentration, persistence or pace. Ms. DeLeon's ability to return to school and take and pass college classes also undermines Dr. Asher's opinion that even a minimal increase in mental demands or change in environment would cause her to decompensate. Based on this record, the ALJ reasonably concluded that while Ms. DeLeon "might not have the mental capability she had pre-morbid prior to the injury, she has the ability to do full-time, simple work." Tr. 784.

### 6. Non-Examining Physician's Opinions

Ms. DeLeon contends the ALJ erred in evaluating the non-examining opinions of Neil E. Berner, M.D., Sharon B. Eder, M.D., Sandra L. Lundblad, Ph.D., and Paul Rethinger, Ph.D. Dkt. 17 at 11-12. This argument fails. The ALJ gave some weight to the opinions of Dr. Berry and Dr. Eder as to Ms. DeLeon's physical impairments and gave great weight to the opinions of Dr. Rethinger and Dr. Lundglad as to Ms. DeLeon's mental impairments in determining the RFC. Tr. 782-83. Ms. DeLeon argues the ALJ erred in affording greater weight to the opinions of these non-examining doctors than to the examining opinions of Dr. Perillo, Dr. Schleef and Dr. Guerreiro. Dkt. 17 at 12. However, as discussed above, the ALJ properly discounted the opinions of Dr. Perillo, Dr. Schleef and Dr. Guerreiro and, as such, this argument fails to establish error. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (Holding "the ALJ met his burden of giving specific, legitimate reasons based on substantial evidence for rejecting the examining physician's opinion on mental residual functional capacity in favor of the nonexamining expert's opinion."). Ms. DeLeon also argues the opinions of Dr. Rethinger and Dr. Lundblad are entitled to limited weight because they did not review any evidence beyond September 2009. Dkt. 17 at 12. However, Ms. DeLeon fails to cite to any evidence after

September 2009, which was not properly discounted, which undermines Dr. Rethinger and Dr. Lundblad's opinions. As such, this argument also fails to establish error.

In sum, Ms. DeLeon fails to establish the ALJ erred in evaluating the non-examining opinions of Dr. Berry, Dr. Eder, Dr. Rethinger and Dr. Lundglad.

**B.     Ms. DeLeon's Testimony**

Ms. DeLeon argues the ALJ erred in rejecting her testimony. Dkt. 17 at 11-23. The ALJ found the medical evidence of Ms. DeLeon's underlying impairments might reasonably produce the symptoms alleged and did not find that Ms. DeLeon was malingering. Tr. 777. Consequently, the ALJ was required to provide specific, clear and convincing reasons for rejecting Ms. DeLeon's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Factors that an ALJ may consider in weighing a claimant's credibility include: inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).

The ALJ reasonably discounted Ms. DeLeon's testimony based on inconsistent statements regarding her activities and abilities. *See Orn*, 495 F.3d 625, 636. Specifically, the ALJ noted that Ms. DeLeon's testimony of significantly disabling limitations was inconsistent with her reports elsewhere in the record. Tr. 786. Substantial evidence supports this finding. For instance, at the December 2014 hearing Ms. DeLeon testified that "nothing new was wrong" but also testified when she tried to concentrate for even an hour or so she was unable to think, got a bad headache and "shut down." Tr. 778, 1188. However, as the ALJ notes, Ms. DeLeon

reported elsewhere that she could pay attention "for a long time" to a topic she was familiar with, that she was able to follow a recipe and was certain she would be able to follow simple spoken instructions. Tr. 255, 786. Moreover, while at the hearing Ms. DeLeon testified if she tried to clean the house or get laundry done it got "overwhelming", she reported elsewhere that, although it caused her some back and neck pain, she could "do housework all day long", was "great" under stress and felt calmer under crisis. Tr. 256, 586. Moreover, the ALJ pointed out that on her forms on appeal, Ms. DeLeon reported her "fog" had lifted, her cognition had improved, and she perceived herself as "functioning more completely with fewer mistakes." Tr. 284, 287. The ALJ could reasonably find these statements of improvement inconsistent with Ms. DeLeon's testimony at her later hearings which described the same or even worsening symptoms than those previously described in the record. Tr. 284, 287. On this record, the ALJ reasonably discounted Ms. DeLeon's testimony based on her inconsistent statements regarding her abilities and level of impairment.

The ALJ also found Ms. DeLeon's daily activities inconsistent with her claim that she is disabled. Tr. 785-86. Ms. DeLeon argues the ALJ erred in rejecting her testimony on this basis. Dkt. 17 at 13. She contends the ALJ failed to recognize the difference between being able to engage in activities in your home and in a work environment, and that Ms. DeLeon struggled with daily activities and received assistance from her family. *Id.* In discounting Ms. DeLeon's testimony on this basis, the ALJ noted that Ms. DeLeon attended college full-time and acted as the primary caretaker for three children under 10, two of whom had special needs. Tr. 785-86. The ALJ noted that Ms. DeLeon testified in January 2011 that she had taken a half-time load of college classes the prior term and that she was currently taking a full load of 12 credits. Tr. 785, 804-806. Ms. DeLeon testified that although she was having a hard time in math class, she was

doing well in her bookkeeping and writing courses. Tr. 785, 806-807. The ALJ further noted that Ms. DeLeon's mother indicated she helped Ms. DeLeon with the children about three times a week but that Ms. DeLeon was the primary caretaker and that "taking care of three young children at home with only minimal assistance, especially in light of the fact two children have special needs, is both emotionally and physically demanding." Tr. 785-86. The ALJ found these activities inconsistent with Ms. DeLeon's claims of disabling physical and mental symptoms.

Ms. DeLeon presents nothing demonstrating the ALJ's findings lack support in the record. Rather, she argues these activities do not capture the true nature of her limitations and that, as she testified, she struggles with performing these activities. However, even if Ms. DeLeon's view of her ability to perform daily activities suggests some difficulty functioning, the ALJ may rely upon a claimant's activities as grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Molina*, 674 F.3d at 1113; *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). This is what the ALJ did here. The ALJ considered and rejected Ms. DeLeon's testimony that she is disabled on the grounds that the activities discussed above show that Ms. DeLeon is more functional than she claims. *See, e.g., Mitchell v. Colvin*, 584 Fed.Appx. 309, 311 (9th Cir. 2014) (upholding finding that claimant's allegations of disabling impairments were inconsistent with daily activities that included caring for children, driving, shopping, and riding a bicycle).

Even if Ms. DeLeon's alternative interpretation of her activities is also reasonable, the Court cannot say the ALJ's findings lack support in the record, and cannot say the ALJ's finding that Ms. DeLeon's activities show she is more functional than she claims is unreasonable. Under

these circumstances, the Court is required to affirm the ALJ's determination. *Tommasetti*, 533 F.3d at 1038 (When the evidence is susceptible to more than one rational interpretation, the court must affirm the ALJ's findings if they are supported by inferences reasonably drawn from the record.).

In sum, the ALJ gave several clear and convincing reasons for discounting Ms. DeLeon's testimony and the ALJ's finding on this point is affirmed.[6]

## C. Lay Testimony

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

### 1. Carla Scaletta

Ms. DeLeon's mother, Carla Scaletta, submitted a lay witness statement in February 2009. Tr. 239-46. Ms. Scaletta indicated she visited Ms. DeLeon's children approximately three times a week, and also helped her with transportation and household chores. *Id.* She stated that Ms. DeLeon could only sleep 4 hours, suffered from chronic pain and "fog head" as well as visual disturbances and light and noise sensitivity. *Id.* She indicated when Ms. DeLeon walked for even a few minutes it caused "electrical surges" throughout her lower back down her knees. *Id.* She further indicated Ms. DeLeon was too irritable and unfocused to shop, unable to handle

---

[6] The ALJ also gave several other reasons for discounting Ms. DeLeon's testimony. However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reason for discounting Ms. DeLeon's testimony. *See Carmickle*, 533 F.3d at 1162.

money, could never go out alone, needed reminders for appointments and needed to be driven "everywhere", could not focus long enough to write a letter, misread documents, mixed up information, and forgot important dates and deadlines. *Id.*

The ALJ reasonably discounted Ms. Scaletta's opinion as inconsistent with many of Ms. DeLeon's statements regarding the nature and extent of her symptoms and limitations. Tr. 785. For instance, the ALJ noted that Ms. DeLeon reported in March 2009 that she went shopping once a month, she could handle her own finances, and she drove to pick her children up from school. Tr. 253, 785. The ALJ further noted, contrary to Ms. Scaletta's testimony, the record does not show that Ms. DeLeon is unable to leave the house alone and evidence in the record demonstrates she is able to write detailed, logical and articulate letters without assistance. Tr. 785. These inconsistencies between the level of impairment described by Ms. Scaletta and that described by Ms. DeLeon are a germane reason to discount Ms. Scaletta's statements. Ms. DeLeon argues the ALJ erred in discounting Ms. Scaletta's statements on this basis because it has been six years between Ms. DeLeon's injury and the ALJ's decision and her symptoms have "waxed and waned somewhat." Dkt. 17 at 23. However, several of Ms. DeLeon's conflicting statements regarding her abilities and level of functioning were made just one month, not several years, after Ms. Scaletta's statements. Moreover, the ALJ could reasonably conclude that Ms. DeLeon's ability to write detailed, logical and articulate letters as inconsistent with the level of impairment described by Ms. Scaletta.

The ALJ also reasonably discounted Ms. Scaletta's statements regarding the severity of Ms. DeLeon's cognitive limitations as inconsistent with her demonstrated ability to complete college level coursework. Tr. 785. As noted above, it is reasonable to conclude that in order to complete college level coursework an individual must be able to learn and remember material

and to maintain sufficient concentration, persistence and pace to study, complete assignments and pass tests. The ALJ could reasonably find that Ms. DeLeon's ability to complete this level of coursework, even with some difficulty, was inconsistent with the extreme and disabling level of cognitive limitation described by Ms. Scaletta. Ms. DeLeon does not challenge this basis for rejecting Ms. Scaletta's statement and it constitutes another germane reason for doing so which the Court will not disturb. *See Independent Towers of Wash.*, 350 F.3d at 929 (the Court will "review only issues which are argued specifically and distinctly in a party's opening brief.") (internal citation and quotation marks omitted).

In sum, the ALJ did not err in discounting Ms. Scaletta's statements.

**2.     Rudy DeLeon**

Ms. DeLeon's husband, Rudy DeLeon, also submitted statements in April 2011 and December 2014. Tr. 346-47, 1112-13. Mr. DeLeon states that for the first two years following the accident Ms. DeLeon was in a "fog." Tr. 1112. He states that the last six years have been the hardest of their lives. *Id.* He indicates that prior to the accident Ms. DeLeon was extremely capable, confident, independent and had a good memory but that since the accident her confidence is low, she needs him to drive her places, she is forgetful, has dizzy spells, is in constant pain and takes several medications. *Id.*

Ms. DeLeon contends the ALJ erred in failing to address Mr. DeLeon's statement entirely. Dkt. 17 at 23. The Court agrees the ALJ erred in failing to address this statement. However, Ms. DeLeon fails present a specific argument or evidence establishing that this error was harmful. *See Avila*, 2008 WL 4104300 at * 2 (citing *Northwest Acceptance Corp.*, 841 F.2d at 923-24 (party who presents no explanation in support of claim of error waives issue); *Ludwig*, 681 F.3d at 1054 (the burden is on the party claiming error to demonstrate the error and that the

error was harmful). Where an ALJ has provided clear and convincing reasons for finding a claimant not fully credible, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Here, Mr. DeLeon provided testimony that does not appear to describe any limitation not already described by the claimant, i.e., both Ms. DeLeon and Mr. DeLeon stated that Ms. DeLeon was less functional than the ALJ found. The ALJ properly rejected Ms. DeLeon's testimony about the severity of her limitations on the grounds that the claims were inconsistent with many of her other statements in the record regarding the nature and extent of her limitations and as inconsistent with her activities of daily living. The ALJ's well-supported reasons for rejecting Ms. DeLeon's testimony applies equally well to the lay witness testimony. Thus, the ALJ's failure to address Mr. DeLeon's testimony is harmless. *See Valentine*, 574 F.3d at 694; *Molina*, 674 F.3d at 1122.

In sum, Ms. DeLeon fails to establish the ALJ harmfully erred in evaluating the lay testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 13th day of November, 2017.

The Honorable Richard A. Jones
United States District Judge

ORDER AFFIRMING COMMISSIONER'S
FINAL DECISION - 20